# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

---

99-6005MN
99-6006MN

---

| | | |
|---|---|---|
| In re: Consumers Realty & Development Company, Inc., | * | |
| | * | |
| | * | |
| Debtor. | * | |
| | * | |
| Consumers Realty & Development Company, Inc., | * | Appeal from the |
| | * | United States Bankruptcy Court |
| | * | for the District of Minnesota |
| Appellant/Cross-Appellee | * | |
| | * | |
| v. | * | |
| | * | |
| Sandra Goetze, | * | |
| | * | |
| Appellee/Cross-Appellant | * | |

---

Submitted: July 20, 1999
Filed: September 15, 1999

---

Before KOGER, Chief Judge, SCHERMER and SCOTT, Bankruptcy Judges

---

KOGER, Chief Judge

Debtor, Consumers Realty & Development Company, Inc. ("Debtor") appeals from the January 14, 1999, order of the bankruptcy court[1] allowing the claim of Sandra Goetze as the sole owner of the claim in the amount of $193,535.85. Sandra Goetze cross-appeals as to the bankruptcy court's denial of interest on her claim. For the reasons set forth below, we affirm.

## BACKGROUND

The Debtor was incorporated in 1973 and was solely owned by Steven Grohoski. In January, 1990, the Debtor borrowed $52,500.00 from Suburban Builders, Inc., a construction company owned at that time by Grohoski's sister, Sandra Goetze, and her then-husband, Delbert Goetze. This loan was evidenced by a promissory note made payable to Suburban Builders. In February that same year, the Debtor borrowed an additional $205,000.00 from the Goetzes, this one evidenced by a promissory note made payable to Sandra and Delbert Goetze, as husband and wife.

In February, 1992, the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code. In Schedule F filed with the 1992 Petition, the Debtor listed a fixed, liquidated, undisputed debt to Sandra and Delbert Goetze d/b/a/ Suburban Builders in the amount of $280,500.00. In July, 1992, Claim No. 19 was timely filed in the Debtor's case in the name of "Sandra and Delbert Goetze" in the amount of $280,500.00. The two promissory notes described above were attached to Claim No. 19 as evidence of the debt. No separate claim was filed on behalf of Suburban Builders in the 1992 case. Claim No. 19 was treated as an unsecured, non-priority claim in the 1992 case.

While the Debtor's 1992 bankruptcy case was pending, Sandra and Delbert Goetze were divorced. The 1993 divorce decree, which was prepared by Sandra without the aid of counsel, awarded to Sandra "the Steven Grohoski notes" and split the Suburban Builders stock between them equally. The divorce decree made no specific mention of Claim No. 19 or of any promissory notes of "Consumers Realty."

---

[1] The Honorable Nancy Dreher, Bankruptcy Judge, United States Bankruptcy Court for the District of Minnesota.

Shortly after the divorce, in April 1993, the Debtor's Chapter 11 Plan was confirmed. Class H, which included Claim No. 19, was to be paid slightly more than 79% over five years. Thus, applying this percentage figure, Claim No. 19 was to be paid $222,535.85 over the five years. The Plan made no mention of interest on this claim.

The Debtor quickly defaulted on the Plan. It made only four payments on Claim No. 19 over the life of the Plan: Delbert received a payment in the amount of $10,000 on May 17, 1995; Sandra received a payment of $10,000 on May 18, 1995; Sandra received $5,000 on May 22, 1995; and Delbert received $4,000 on October 1, 1996.

On February 5, 1997, the law firm Christoffel, Elliott & Allbrecht ("CE&A") who had represented the Debtor in the 1992 case, obtained a judgment for unpaid administrative fees incurred in the 1992 bankruptcy. After several years of what the parties describe as rather acrimonious litigation between CE&A and Grohoski, CE&A was ultimately awarded all stock ownership and control of the Debtor company in early 1998 by a state appellate court. The judgment conferring ownership and control was entered *nunc pro tunc* to February 14, 1994.

On October 10, 1997, Sandra gave the Debtor formal notice of its default on the 1993 Plan. On February 4, 1998, Sandra and two other creditors filed an involuntary Chapter 7 petition against the Debtor which was now owned and controlled by CE&A. At that time, Sandra listed her claim in the amount of $265,500, a sum which she reached by subtracting the two payments she received (totaling $15,000) from the original claim amount she and Delbert had asserted in the 1992 case ($280,500).

This second case was then converted to Chapter 11, an Order for Relief was entered on February 5, 1998, and a Plan which proposed to pay unsecured creditors 100% of their allowed claims, plus interest, was confirmed. Apparently, at the time the 1998 Plan was proposed and confirmed, now being under new management, the Debtor was solvent and could make the 100% payout with interest.

On July 22, 1998, Sandra filed Claim No. 23, which was signed by her attorney, on behalf of "Sandra Goetze and Suburban Builders, Inc.," asserting an unsecured, non-priority claim in the amount of $366,531.89. Attached to the Proof of Claim was an explanation which stated that the claim stemmed from the two promissory notes described above and further alleged that the claim filed in the first case in the amount of $280,500, had been "erroneously filed" and that confirmation in the first case had been obtained by fraud. Thus, Sandra sought the entire amount due under the promissory notes, with interest.

Debtor objected to Claim No. 23 on four basic grounds: (1) that at most, the claim was allowable in the amount of $193,535,85, which is arrived at by subtracting the $29,000 in postconfirmation payments from $222,535.85, which represents the figure arrived at by adjusting Claim No. 19 in the 1992 case down to the 79% payout rate under the 1993 Plan; (2) Sandra's claim was not entitled to interest; (3) Claim No. 23 was jointly owned by Delbert and Sandra and since Delbert did not file a claim in this bankruptcy case or join in Sandra's claim, Claim No. 23 should be disallowed, or at most, Sandra should be entitled to receive only half of the claim, or $96,767.94; and (4) Suburban Builders had no claim that survived the discharge order in the 1992 case, so to the extent Claim No. 23 was filed on its behalf, it should be denied.

In November, 1998, the bankruptcy court held a hearing on the Debtor's objection to Claim No. 23, after which, Sandra filed an amended claim, Claim No. 32, in the same amount as Claim No. 23, this time on behalf of herself, Delbert, and Suburban Builders. Thus, by filing this amended claim, Sandra sought to add Delbert as a claimant, ostensibly in an attempt to remedy or address the Debtor's objection based on the ground that Claim No. 23 should be disallowed because it should have been filed jointly.

In its Order, the bankruptcy court held that: (1) Claim No. 23 filed on behalf of Suburban Builders was disallowed because the confirmation of the Plan in the 1992 case had the effect of discharging the entire preconfirmation debt and replacing it with a new indebtedness as provided in the confirmed plan which named only Delbert and Sandra and not Suburban Builders as the owners of the claim; (2) Claim No. 23 was allowed on behalf

of Sandra as the sole owner of the claim in the amount of $193,535.85, which was the figure urged by the Debtor and which represented the 79% allowed claim in the 1992 case less $29,000 in postconfirmation payments; (3) Sandra was not entitled to interest on her claim; and (4) the Amended Proof of Claim No. 32 on behalf of Sandra, Delbert, and Suburban Builders was disallowed.

Debtor appeals as to the finding that Sandra was the sole owner of the claim and to the bankruptcy court's allowance of the claim in the full amount of $193,535.85, as opposed to only one half that amount as representing Sandra's half interest. Sandra cross-appeals as to the denial of interest. Neither side appeals the bankruptcy court's arrival at the claim figure amount of $193,535.85, except the Debtor's argument that Sandra is only entitled to half of that amount. No one disputes the finding that Suburban Builders has no claim in this case and Suburban Builders takes no part in this appeal. Finally, neither side appeals the disallowance of the Amended Proof of Claim.

STANDARD OF REVIEW

We review the findings of fact of the bankruptcy court for clear error and its legal determinations *de novo*. See O'Neal v. Southwest Mo. Bank (In re Broadview Lumber Co.), 118 F.3d 1246, 1250 (8th Cir.1997); Hartford Cas. Ins. Co. v. Food Barn Stores, Inc. (In re Food Barn Stores, Inc.), 214 B.R. 197, 199 (B.A.P. 8th Cir. 1997); see also Fed. R. Bankr. P. 8013.[2]  "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed." Anderson v. Bessemer City, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (quoting United States v. U.S. Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)); accord In re Waugh, 95 F.3d 706, 711 (8th Cir. 1996); Chamberlain v. Kula (In re Kula ), 213 B.R. 729, 735 (B.A.P. 8th Cir. 1997). "If the bankruptcy court's account of the evidence is plausible in light of the entire record

_____

[2] Rule 8013 of the Federal Rules of Bankruptcy Procedure provides, in pertinent part, as follows:  "Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses."  Fed. R. Bankr. P. 8013.

5

viewed, it must be upheld even though we may have weighed the evidence differently had we been sitting as the trier of fact." Forbes v. Forbes (In re Forbes), 215 B.R. 183, 187 (B.A.P. 8th Cir. 1997) (citing Anderson, 470 U.S. at 573-74, 105 S.Ct. at 1511).

DISCUSSION

Debtor's Appeal

The threshold issue as to Debtor's appeal is whether the bankruptcy court was clearly erroneous in concluding that Sandra was the exclusive owner of Claim No. 23. A properly filed proof of claim is prima facie evidence of the validity of the claim. Fed. R. Bankr. P. 3001(f). Because the Debtor objected to Claim No. 23, the Debtor was required to come forward with evidence rebutting the claim. See Gran v. Internal Revenue Serv. (In re Gran), 964 F.2d 822, 827 (8th Cir. 1992). Once the objecting party produces evidence rebutting the claim, the burden of proof shifts to the claimant to produce evidence establishing the validity of the claim. Id. Thus, once an objection is made to the proof of claim, the ultimate burden of persuasion as to the claim's validity and amount rests with the claimant. See In re Allegheny Int'l, Inc., 954 F.2d 167, 173-74 (3rd Cir. 1992); In re Harrison, 987 F.2d 677, 680 (10th Cir. 1993). As the bankruptcy court concluded, since the Debtor raised an objection to Claim No. 23, the burden shifted to Sandra to prove by a preponderance of the evidence that she held an enforceable claim against the Debtor and the amount of the claim.

Again, neither side asserts error in the bankruptcy court's conclusion that Suburban Builders' claim was effectively extinguished because of its treatment in the first bankruptcy case and that following the first case, any claim that may have once belonged to Suburban Builders now belonged to the Goetzes, either to Sandra exclusively or to both of them, as determined below. Thus, the sole issue as to ownership is whether the claim which had originally belonged to the Goetzes jointly was awarded to Sandra exclusively in the divorce.

The bankruptcy court had concluded that although the claim had originally been a joint claim in the first bankruptcy, Sandra was now the exclusive owner of the claim because she had been awarded the claim against the Debtor "by way of the garbled wording of the

6

dissolution papers." The court further found that the fact that Sandra had pursued payment of the claim, filed the involuntary petition against the Debtor, and filed the claim which did not list Delbert as having an interest, all supported the conclusion that she had been awarded the claim in the divorce.

In essence, Debtor asserts that the bankruptcy court erred in this finding because the divorce decree was unambiguous and it did not award the claim against the Debtor to Sandra. Thus, since it was originally owned jointly and no act occurred which operated to sever the joint ownership in any way, the claim should have been filed jointly. According to the Debtor, since it was not filed jointly, it should have been disallowed in whole or in part.

Specifically, the dissolution decree provides, in relevant part:

> The Petitioner [Sandra] shall be awarded the Edward D. Jones money market account, *the promissory notes of Steven Grohoski* and Stephanie Watkins, and all of the parties['] stocks except Wireless Cable. Respondent [Delbert] shall be awarded the Marquette Bank Lakeville money market account, the promissory notes from Craig Benson, George Kabes, Chris Anderson, Ron Bartosch, and Keith Kellar, the balance of the proceeds remaining from the sale of Interstate 2-way, and the parties' stock in Suburban Pools, Inc.
>
> The parties' stock in Suburban Builders, Inc. shall be divided equally between the parties and the proceeds of the personal injury claim of Respondent shall be divided one-third to Petitioner and two-thirds to Respondent.

(Emphasis added.) The divorce decree contains no reference to Consumers Realty, to the bankruptcy, or to Claim No. 19. The Debtor asserts this passage is unambiguous and because it is silent on the issue of its debt, the debt was not awarded to anyone and it remains a joint asset. The bankruptcy court, on the other hand, held that this language, coupled with the Goetzes' testimony and conduct, indicated that they intended Sandra to receive the claim in the divorce.

We find that this conclusion by the bankruptcy court is not clearly erroneous. Since there is no specific reference to "Claim No. 19" or "the promissory notes of Consumers

7

Realty" or even to "the bankruptcy claim," it is logical to consider the possibility that the reference to the "promissory notes of Steven Grohoski" may have been intended to mean these claims. This is particularly true since the divorce decree contains no further identification, such as the dates or amounts, of the notes. Considering the fact that Sandra drafted the divorce decree herself without the aid of counsel, we cannot say it was clearly erroneous for the court to find that this reference was "garbled" or ambiguous.[3]

That being the case, it was appropriate for the court to look to the parties' testimony and post-divorce conduct in determining what the language was intended to mean. Sandra testified that because Steven Grohoski was the sole owner of Consumers Realty, she believed them to be one and the same. Considering Sandra's apparent lack of sophistication in legal matters, it was reasonable for the bankruptcy court to rely on this testimony to support the conclusion that the Goetzes intended for the reference to "the promissory notes of Steven Grohoski" to mean the promissory notes of Steven Grohoski's company, particularly since Steven Grohoski (and no one else) signed both of the promissory notes on behalf of his company.

It is significant that in making its decision, the bankruptcy court specifically relied on the credibility of the witnesses, particularly Sandra and Delbert, and the history of the case regarding Steven Grohoski's actions. We give particular deference to the bankruptcy court's findings which turn upon the credibility of witnesses. Fed. R. Bankr. P. 8013; see Hold-Trade Int'l, Inc. v. Adams Bank & Trust (In re Quality Processing, Inc.), 9 F.3d 1360, 1364 (8th Cir. 1993).

Debtor contends, however, that even the Goetzes' testimony and post-divorce conduct do not support a finding that Sandra was the sole owner of the claim and in fact support a

---

[3] This conclusion is bolstered by the context of this entire clause in the divorce decree because other references within this very provision are "somewhat garbled" as well. For instance, in one sentence, Sandra was awarded "all of the parties['] stocks except Wireless Cable" and then in the next paragraph, "[t]he parties' stock in Suburban Builders, Inc. shall be divided equally." Obviously, these two statements are contradictory and further indicate that the decree was drafted by a party inexperienced in drafting such documents.

finding of co-ownership. Debtor points to the fact that both Sandra and Delbert testified that they had agreed that Sandra would pursue the claim against the Debtor and then pay over to Delbert his share of whatever she received against the portion of the claim that had been owed to Suburban Builders. According to the Debtor, if Sandra was to pay over some amount to Delbert, this does not comport with a finding of exclusive ownership. Additionally, Debtor points to the fact that Steven Grohoski made two payments totaling $14,000 on behalf of the Debtor under the 1993 Plan to Delbert rather than to Sandra. According to Debtor, if Sandra was the sole owner of the claim, then Sandra would have complained about those payments.

The bankruptcy court dealt with the testimony that Sandra was responsible for collecting the debt as well as the post-petition payments that were made to Delbert and determined that while these things might constitute some evidence of joint ownership, they were not controlling. The court found that given the parties' lack of legal training and "when dealing with Sandy's scoundrel of a brother," it was not surprising that payments went to Delbert.

We will agree with the Debtor (and even the bankruptcy court) that some parts of the testimony and the post-divorce payments to Delbert which were never objected to by anyone, including Sandra, may be considered evidence that Delbert had some ownership interest in part of the claim. However, we believe that the bankruptcy court did not clearly err in finding these things were not controlling. The record before us indicates that this case has a long history with which the bankruptcy court was very familiar. Thus, it is particularly appropriate that we give due deference to the bankruptcy court's credibility determinations and interpretation of the documentary evidence.

In sum, we believe that at best, there are two ways to look at the evidence in this case. The bankruptcy court simply viewed the facts one way and made its determination based on that view of the facts and the history of this case. Where there are two permissible views of the evidence, the appellate court must uphold the fact finder's choice between them. Anderson v. Bessemer City, 470 U.S. 564, 573-74, 105 S. Ct. 1504, 1511-12 (1985). As

9

such, because we are not convinced that the bankruptcy court's factual determinations are clearly erroneous, we affirm its holding that Sandra Goetze is the exclusive owner of Claim No. 23.[4]

Sandra's Cross Appeal

Sandra cross-appeals the bankruptcy court's denial of interest on her claim. As the bankruptcy court aptly pointed out, the Bankruptcy Code provides for three categories of interest: interest accrued prior to the filing of the bankruptcy petition (prepetition interest); (2) interest accrued after the filing of a petition but prior to the reorganization plan's effective date (pendency interest); and (3) interest to accrue under the reorganization plan (plan interest). See Key Bank Nat'l Ass'n v. Milham (In re Milham), 141 F.3d 420, 422-23 (2d Cir. 1998) (citation omitted). Sandra does not dispute that since she is an unsecured creditor, she is not entitled to pendency interest under § 506(b). Further, the 1998 Plan provides for payment of plan interest because the Debtor is now solvent. Consequently, these two issues are not contested.

Rather, Sandra asserts she is entitled to prepetition interest for the period between the Debtor's last payment under the 1993 Plan (on October 1, 1996) and the filing of the involuntary petition (on February 5, 1998).

"Prepetition interest is generally allowable to the extent and at the rate permitted under the applicable nonbankruptcy law, including the law of contracts." In re Milham, 141 F.3d at 423. Thus, in order to warrant an award of prepetition interest in a bankruptcy, a claimant must show an independent statutory or contractual basis for the entitlement to the interest. See In re Pettibone Corp., 134 B.R, 349, 351 (Bankr. D. Ill. 1991) ("[p]re-petition interest otherwise due as a matter of contract or law will generally be fully allowed as part of a claim"). There is no question that Sandra was entitled to whatever interest accrued on the promissory notes prior to the filing of the 1992 petition. However, interest on a debtor's

_____

[4] We reject Debtor's argument that Sandra Goetze should be judicially estopped from asserting on appeal to be the sole owner of Claim No. 23 because she filed the Amended Proof of Claim as being without merit.

10

obligation ceases upon the filing of the bankruptcy petition. See 11 U.S.C. § 502(b)(2); Ford Motor Credit Co. v. Dobbins, 35 F.3d 860, 869 (4th Cir. 1995). As a result, when the Debtor filed its 1992 bankruptcy petition, Sandra's right to interest under the terms of the promissory notes ceased.

Furthermore, when the 1993 Plan was confirmed, this had the effect of replacing the obligations under the promissory notes with the obligations as provided in that Plan. See In re Ernst, 45 B.R. 700, 702 (Bankr. D. Minn. 1985) (the effect of confirmation is to discharge the entire preconfirmation debt, replacing it with a new indebtedness as provided in the confirmed plan; the plan is essentially a new and binding contract, sanctioned by the Court, between a debtor and his preconfirmation creditors). Consequently, as the bankruptcy court found, and Sandra concedes, the applicable "contract" for purposes of determining Sandra's entitlement to prepetition interest in the current bankruptcy case is the 1993 Plan. The 1993 Plan contains no provision allowing interest on Sandra's claim, even in the event of default. As a result, Sandra cannot show any contractual right to prepetition interest in the current bankruptcy case.

That being the case, Sandra suggests she should be entitled to the statutory rate of interest under Minnesota law. See Minn. Stat. § 334.01 (1995) (providing 6% interest on any legal indebtedness unless a different rate is contracted for in writing). The bankruptcy court concluded that even assuming Sandra would have been entitled to such interest under the Minnesota statute, which the bankruptcy court believed was questionable, the State law would be preempted by the provisions of the 1993 confirmed Plan. We believe the bankruptcy court was correct in this conclusion.

> Because the bankruptcy code explicitly provides that "the provisions of a confirmed plan bind the debtor . . . and any creditor . . .," 11 U.S.C. § 1141(a), the terms of the Plan govern any award of interest due to the [creditor]. Furthermore, it is well settled that the Supremacy Clause dictates that when state law is contrary to federal bankruptcy law, the bankruptcy provisions prevail.

11

Ocasek v. Manville Corp. Asbestos Disease Compensation Fund, 956 F.2d 152, 154 (7th Cir. 1992) (citing Jones v. Keene Corp., 933 F.2d 209, 214 (3d Cir. 1991); In re Wimmer, 121 B.R. 539, 543 (Bankr. C.D. Ill 1990)). "If a provision of the Plan, a creature of federal law, conflicts with the law of a state and the state law 'frustrates the full effectiveness of federal law [the state law] is rendered invalid by the Supremacy Clause.'" Jones v. Keene Corp., 933 F.2d 209, 214 (3d Cir. 1991) (quoting Perez v. Campbell, 402 U.S. 637, 652, 91 S. Ct. 1704, 1712, 29 L.Ed.2d 233 (1971)).

Consequently, under the controlling bankruptcy law and the 1993 Plan provisions, Sandra is not entitled to interest for the period prior to the filing of the current bankruptcy case.

However, while Sandra concedes that the general rule under bankruptcy law is to deny interest on a post-petition claim because such an award could impair the reorganization plan's objective of providing equal and fair treatment to all claimants, she asserts a court can depart from that general rule and award interest in two instances. First, the court can award such interest, despite the general rule, "where the alleged bankruptcy debtor ultimately proves solvent." See Securities Investor Prot. Corp. v. Ambassador Church Fin./Dev. Group, 788 F.2d 1208, 1211 n.4 (6th Cir. 1986); see also In re Twin Parks, L.P., 720 F.2d 1374, 1377 (4th Cir. 1983). Second, the court can award such interest on equitable grounds where the plan does not specifically prohibit the payment of interest and where the debtor's actions have caused the delay in the resolution and payment of claims. See e.g. Sunbeam-Oster Co. v. Lincoln Liberty Ave., Inc. (In re Allegheny Int'l, Inc.), 145 B.R. 823, 826 (W.D. Pa. 1992).

Sandra points out that the Debtor is now solvent (and so no other creditor would be harmed or disadvantaged by awarding her interest) and considering the way in which her claim has been treated over the years, the bankruptcy court should have departed from the general rule that would have denied her interest following the 1993 Plan. She focuses primarily on the facts that her claim had already been reduced in the first case and so she is not receiving the full amount of her original claim regardless of interest, and that she has

been subject to lengthy delay in payment which was entirely within the control of the Debtor and the CE&A firm.

She relies primarily on the case <u>Sunbeam-Oster Co. v. Lincoln Liberty Ave., Inc. (In re Allegheny Int'l, Inc.)</u>, 145 B.R. 823 (W.D. Pa. 1992), to support her position that she should be entitled to interest based on CE&A's conduct and the delay in payment. However, the bankruptcy court in this case distinguished <u>In re Allegheny Int'l.</u> in two respects. First, the Plan in <u>Allegheny</u> was silent on the issue of interest in the event of default, whereas here, the 1993 Plan specifically provided that timely principal plan payments were the creditors' *quid pro quo* and it specifically stated that if the Debtor could not make its scheduled Plan payments, Debtor's penalty was a temporary reduction in the amount of payments to be made.

Second, and more importantly, the bankruptcy court concluded that the equity in this case did not support awarding interest to Sandra in this case because Grohoski had favored certain creditors over others when he was in control of the Debtor and the Goetzes were among the chosen few to receive payments after the 1992 case. Specifically, the bankruptcy court found that "[t]o award them interest when other creditors have yet to receive any payment would certainly be inequitable because it would sanction Grohoski's practice of ignoring the Plan and would treat Sandy and Delbert better than other similarly situated creditors." We cannot disagree with this finding by the bankruptcy court. The evidence supports this equitable determination and we decline any suggestion we should second-guess the bankruptcy court's determination on this issue.

As a result, the bankruptcy court's denial of interest on Sandra's claim is affirmed.

CONCLUSION

Because we conclude that the bankruptcy court's findings are not clearly erroneous, the judgment is affirmed.

13

A true copy.

Attest:

CLERK, U.S. BANKRUPTCY APPELLATE
PANEL, EIGHTH CIRCUIT.