## In re COMMERCIAL MILLWRIGHT SERVICE CORP., Debtor.

United States of America, Plaintiff,

v.

Lincoln Savings Bank and Habbo G. Fokkena, Defendants.

Habbo G. Fokkena, Counter Claimant/Cross Claimant,

v.

United States of America and Lincoln Savings Bank, Counter Defendants/Cross Defendants.

No. C 98–43 MJM.

United States District Court, N.D. Iowa, Cedar Rapids Division.

Feb. 17, 2000.

Martin McLaughlin, Assistant U.S. Attorney, Cedar Rapids, IA, for United States of America on behalf of IRS.

Habbo Fokkena, Clarksville, IA, for Chapter 7 Trustee.

Carroll Reasoner, Cedar Rapids, IA, for Lincoln Savings Bank.

## ORDER

MELLOY, Chief Judge.

### OPINION AND ORDER ON APPEAL FROM THE BANKRUPTCY COURT

Creditor Lincoln Savings Bank ("the Bank") appeals to this Court from a series of orders by the United States Bankruptcy Court for the Northern District of Iowa.[1] The bankruptcy court determined that two federal tax liens perfected on August 16, 1989 and December 13, 1989 attached to all property of Debtor Commercial Millwright Service Corporation ("Commercial Millwright" or "the Debtor") and take priority over any security interest of the Bank acquired after confirmation of the Debtor's initial Chapter 11 bankruptcy plan. Additionally, the bankruptcy court ruled that the Bank failed to perfect its postconfirmation security interest. Upon consideration of the briefs and the record in this case, the decision of the bankruptcy court is affirmed.

### BACKGROUND

The parties do not dispute the operative facts. On December 29, 1989, Commercial Millwright filed a Chapter 11 petition in bankruptcy. The bankruptcy court confirmed a reorganization plan for the Debtor on July 30, 1991. Under the confirmed plan, the Bank and the IRS received priority as secured creditors. The Bank had perfected its security interest on April 17, 1989 by filing a U.C.C. financing statement. The IRS had perfected its tax liens

---

1. The Honorable Paul J. Kilburg, Judge, presiding. This Court has jurisdiction for this appeal pursuant to 28 U.S.C. § 158(a)(1).

on August 16, 1989 and December 13, 1989 by filing notices of tax liens.

The confirmed plan provided, in pertinent part:

> 3.03(c) The liens and encumbrances upon the property securing [the Bank's] claim, as of the time of filing, shall remain as valid liens and encumbrances until this lien is paid in full . . .; (f) the super priority lien existing as a result of the post-petition financing shall remain as a valid lien until such time as that post-petition financing has been paid in full.
>
> 3.04(c) The IRS pre-petition liens which existed at the time of the filing shall remain as valid liens and encumbrances against the property of the Debtor until such time as this claim has been paid in full.

After the bankruptcy court confirmed the plan, Commercial Millwright paid the prepetition notes (discussed in § 3.03(c)) to the Bank as well as the "super priority" postpetition financing (discussed in § 3.03(f)).

After confirmation of Commercial Millwright's first Chapter 11 plan, Commercial Millwright borrowed additional money from the Bank ("post-confirmation advances") and paid towards these new debts. The Debtor signed new promissory notes, assignments of accounts, and other documents in order to create a security interest to secure the post-confirmation advances. Many of the new documents putatively relied on the April 1989 financing statement signed prepetition and a March 1994 continuation statement[2] to perfect a security interest in Commercial Millwright's property. The Bank did file a new U.C.C. financing statement for the post-confirmation loans after the bankruptcy court confirmed the plan.

Commercial Millwright has paid in full both the prepetition debts and the § 3.03(f) "super priority" postpetition financing. (Doc. 1, Ex. 1., at 2) Debtor has failed to pay off its debts to the IRS, and two tax liens are still outstanding.[3] Debtor filed its second Chapter 11 petition on January 3, 1995, and the case converted to a Chapter 7 proceeding on February 2, 1996.

The IRS filed an adversarial complaint in the bankruptcy court to determine the nature and priority of any security interest of the Bank. The Trustee filed a motion to adjudicate law points which the bankruptcy court *sua sponte* converted a motion to for summary judgment and ruled in favor of the Trustee and the IRS. (Doc. 1, Ex. 1., at 1) In this first order, the bankruptcy court held that the two federal tax liens perfected on August 16, 1989 and December 13, 1989 attached to all of the Debtor's property and had priority over the Bank's interest. The bankruptcy court also held that the Bank's senior secured interest retained in the confirmed plan terminated on the date that the Debtor paid the pre-confirmation debts in their entirety. The bankruptcy court further held that the post-confirmation loans of the Bank were unperfected. The Bank appealed to this Court.[4]

---

2. The Bank filed the continuation statement on March 25, 1994, but the Debtor never signed it. (Doc. 1, Ex. 1., at 12)

3. The total amount of tax owed is $19,125.33 with a penalty total of $16,778.49 and interest of $30,398.60 for a total secured claim of $66,302.42. In addition, the IRS is owed a priority claim of $28,785.49 and an unsecured claim of $5,055.85 as well as an administrative claim of $50,295.28. (Pla. United States' Brief on Appeal, Doc. 15, at 2)

4. The bankruptcy court's decision was not a final judgment. However, the decision effectively disposed of all the major issues before the court and, as a result, this Court granted interlocutory appeal. The parties have not filed a separate motion for interlocutory appeal to challenge the bankruptcy court's second order which is the subject of this decision. Apparently, the parties believe the prior order granting interlocutory appeal is sufficient to grant authority to appeal the bankruptcy court's decision entered after this Court's prior remand. In any event, interlocutory appeal will be granted in order to avoid any concern about this Court's jurisdiction to

In the face of some uncertainty as to whether the record included the March 1994 continuation statement, this Court remanded to the bankruptcy court with directions to incorporate the continuation statement into the record and determine the statement's effect on the status of the Bank's interest in the Debtor's postpetition property. After remand, the bankruptcy court ruled in a second order that the March 1994 continuation statement, when considered in combination with the original April 1989 financing statement, failed to perfect the Bank's post-confirmation security interest. (Doc. 62.) In response to this new ruling, the Bank renewed its appeal.

On appeal, the parties have filed a stipulation which includes a copy of the March 1994 continuation statement. The Bank raises the following issue in its renewed appeal: the Bank asserts that promissory notes, assignments of accounts, and other documents signed by the Debtor post-confirmation create a security interest that is perfected by the April 1989 financing statement, and thus take priority over the tax liens.

## ANALYSIS

■ This Court reviews *de novo* conclusions of law made by the bankruptcy court. *In re Cochrane,* 124 F.3d 978, 981 (8th Cir.1997); *In re Kjellsen,* 53 F.3d 944, 946 (8th Cir.1995). Summary judgment was properly granted if, assuming all reasonable inferences favorable to the non-moving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Ca-*

*trett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The Bank argues on appeal that the Debtor's initial Chapter 11 petition should not have terminated the Bank's secured interest in the Debtor's property.[5] The Bank asserts that the parties created a new security interest in the Debtor's property after the bankruptcy court confirmed the Debtor's bankruptcy plan. Additionally, the Bank argues that the security interest is perfected by and relates back to the April 1989 financing statement. (Doc. 9, at 7)

■ Bankruptcy law provides that a Debtor's property under a confirmed plan is free and clear of all claims and interests of creditors, unless expressly provided in the plan. 11 U.S.C. § 1141(c) (1998); *In re Be–Mac Transport Co., Inc.,* 83 F.3d 1020, 1025 (8th Cir.1996). The reorganized debtor operates as a new entity, free of its preconfirmation obligations except as provided in the plan. *In re Roy Gooden Plumbing and Sewer Co.,* 156 B.R. 635, 637 (Bankr.E.D.Mo.1993). A secured creditor who participates in the reorganization may lose its lien by confirmation of the plan if the plan does not expressly preserve the lien. *Be–Mac Transp.,* 83 F.3d at 1025–26.

■ The confirmed plan of reorganization "acts like a contract" that binds the parties that participate in the plan. 11 U.S.C. § 1141(a); *In re Varat Enter., Inc.,* 81 F.3d 1310, 1317 (4th Cir.1996). Unless a plan expressly states that a preexisting lien is preserved, the preexisting lien is

determine the issues being decided in this order.

5. When the Bank first filed its appeal, it asserted that the bankruptcy court erred when it converted *sua sponte* the motion to adjudicate law to a motion for summary judgment. In its renewed appeal, the bank has not mentioned its earlier objection to the bankruptcy court's *sua sponte* action. Nonetheless, even if the Bank maintained its objection, the

Court notes that in the context of this renewed appeal, the Bank has had "sufficient advance notice" and an "adequate opportunity" to defend against summary judgment. This is all that is required under *Tenbarge v. Ames Taping Tool Systems, Inc.,* 128 F.3d 656, 658 (8th Cir.1997). Accordingly, if there exists no genuine issues for trial, summary judgment is appropriate as the Bank was on notice.

extinguished. *In re Penrod,* 50 F.3d 459, 463 (7th Cir.1995).

■ The bankruptcy court held that the Debtor's confirmed Chapter 11 plan provided that the Bank's prepetition claims remained as valid liens until the claims were paid in full. Following the language of the plan,[6] the bankruptcy court further found that the Bank's prepetition secured interests in the Debtor's property were extinguished when the Debtor paid the claims in full. This Court agrees that since the confirmed plan did not provide for the secured status of any post-confirmation lending by the Bank,[7] the post-confirmation advances do not enjoy the same priority as the secured status of the prepetition loans (which security interests the Bank perfected in April 1989). The IRS liens, perfected in August and December 1989, take priority over the post-confirmation advances that were not mentioned in the confirmed plan.

The reasoning of the bankruptcy court is correct. The Debtor's Plan of Reorganization, confirmed on July 30, 1991, prioritized the liens in the following order: first, the Bank's lien for prepetition debts until paid in full; second, the IRS liens until paid in full. This Court is not persuaded by the Bank's attempts to join the post-confirmation advances to the prepetition financing statement and take advantage of the prepetition debt's priority over the IRS' tax liens.

■ In this case, the Bank participated in the negotiation of the plan of reorganization and participated in the plan. (Doc. 1, Ex. 1., at 2.) "The liens and encumbrances upon the property securing the Bank's claim, *as of the time of the filing,"* were preserved in the plan until paid in full. (Doc. 1, Ex. 1., at 2 (Emphasis added)) The operative language in the plan, "as of the time of the filing," plainly did not articulate an intent to afford the Bank a valid "first priority" lien on the Debtor's property for post-confirmation lending. As a consequence, the Bank and its post-confirmation advances must stand in line behind the liens of the IRS, which were mentioned expressly in the plan.[8]

Additionally, the Bank has failed to persuade the Court that the post-confirmation promissory notes, assignments of accounts, and other documents the Bank and the Debtor executed with regard to the post-confirmation advances are perfected by the April 1989 financing statement. Because the confirmed plan did not specifically provide for post-confirmation advances, the Bank loaned the post-confirmation advances at the Bank's own peril. Thus, the

---

6. "The liens and encumbrances upon the property securing [the Bank's] claim, as of the time of the filing, shall remain as valid liens and encumbrances until this claim is paid in full . . .;" (Doc. 1, Ex. 1., at 2.)

7. The confirmed plan also provided in § 3.03(f) that the Bank had a "super priority" lien on postpetition financing until the postpetition financing was paid in full. This "super priority" postpetition financing, secured by the Debtor pursuant to a court order and 11 U.S.C. § 364(b) allowing the Debtor to borrow in order to continue its operations under Chapter 11 (DR 90), is distinct from the post-petition financing at issue in this case. The "super priority" lien was paid in full and is no longer valid. (Doc. 1, Ex. 1., at 2.)

8. The Bank vigorously asserts that *General Electric Credit Corp. v. Nardulli & Sons,* 836 F.2d 184 (3d Cir.1988) supports its position. In *Nardulli,* the Third Circuit affirmed a deci-

sion to preserve a creditor's security interest even though it had failed to file a new financing statement following a confirmed plan of reorganization. In the Third Circuit case, however, the plan "expressly acknowledge[d] the continued existence of the [ ] respective security interests." *Id.* at 188. In this case, the plan fails to mention any security interests for postpetition advances.

The Bank fails to recognize the significance of the confirmed plan and the language in § 1141. Since Commercial Millwright's Chapter 11 plan did not allow for a security interest in the postpetition advances by the Bank, "the property dealt with by the plan is free and clear of all interests" not provided for in the plan. 28 U.S.C. § 1141(c). The Bank's failure to file a new financing statement is not fatal to the Bank's case; it is the language in the confirmed plan.

bankruptcy court's decision was correct when it held that Commercial Millwright's Chapter 11 plan terminated any security interest in the Debtor's property once the prepetition debt was paid. The bankruptcy court's decision that the continuation statement did not expand the scope of the secured interests of the Bank beyond the Debtor's prepetition debts was also correct. As the bankruptcy court accurately stated, "[the April 1989 financing statement] terminated upon payment of the Bank's prepetition and postpetition debt in full as provided for in the confirmed plan." (Doc. 1, Ex. 1., at 10.)

The Bank relies upon language in the several promissory notes, assignments of accounts, and other documents that the Debtor granted the Bank to obtain financing following its bankruptcy. Language in the post-confirmation notes putatively relates back to the April 1989 financing statement. The Bank argues that the Debtor's act of signing the documents created a security interest in the Debtor's property that related back and was perfected by the April 1989 financing statement. (Doc. 9, at 9–10) The Bank's argument is substantially similar to its previous argument, i.e., the argument that the 1989 financing statement and 1994 continuation statement expanded the scope of the Bank's secured interest in Debtor's property to the Debtor's post-confirmation advances. The Bank argues that simply because the post-confirmation notes refer to the April 1989 financing statement, the Bank's security interests are perfected as of April 1989. However, as the Court discussed earlier, the April 1989 financing statement terminated when the prepetition debts were paid in full. The post-confirmation promissory notes did not, and could not, revive the April 1989 financing statement. Consequently, the bankruptcy court was correct when it determined that the post-confirmation promissory notes failed to perfect a security interest in the Debtor's property.

Finally, the Court must review the bankruptcy court's decision on remand that the Bank's filing of (1) the March 1994 continuation statement, unsigned by the Debtor, and (2) the April 1989 financing statement, were insufficient to perfect the Bank's postconfirmation security interest in the assets of Commercial Millwright. The practical result of this post-remand ruling by the bankruptcy court is that the Bank's security interest remains unperfected.

Again, the Bank maintains that the confirmed Chapter 11 reorganization plan did not terminate the April 1989 financing statement. The Bank maintains that the original April 1989 financing statement was effectively continued by the March 1994 statement. Thus, the Bank argues, the loan was perfected. Both the trustee and the government agree with the decision of the bankruptcy court and believe that the confirmed plan terminated the legal effect of the April 1989 financing statement.

■ As the Court has discussed *supra*, the legal effect of the April 1989 financing statement was terminated upon confirmation of the Chapter 11 reorganization. Additionally, it is clear that the March 1994 continuation, standing alone, does not perfect the debt because the Debtor never signed the document. *See* Iowa Code § 554.9402(1) ("A financing statement is sufficient if it gives the names of the debtor and the secured party, [and] is signed by the debtor, . . ."); *see also In re Rieber*, 740 F.2d 10, 11 (8th Cir.1984) ("This statement was not effective, however, because it was not signed by the Debtor."). The March 1994 continuation statement cannot revive the prepetition April 1989 statement. The cases to which the Bank cites are inapposite. Accordingly, the post-remand decision of the bankruptcy court was correct, and the Banks security interest remains unperfected.

## ORDER

For the foregoing reasons, the decisions of the bankruptcy court are AFFIRMED, and the case is remanded to the bankruptcy court for further proceedings consistent with this opinion.