# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

No. 02-6009WM

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| Dial Business Forms, Inc., | * | |
| | * | |
| Debtor. | * | |
| | * | |
| | * | |
| General Electric Capital Corporation, | * | |
| | * | Appeal from the United |
| Plaintiff - Appellee. | * | States Bankruptcy Court |
| | * | for the Western District of |
| v. | * | Missouri |
| | * | |
| Dial Business Forms, Inc.; | * | |
| Paul D. Sinclair, as Trustee on behalf | * | |
| of Class 3 Unsecured Creditors, | * | |
| | * | |
| Defendants - Appellants. | * | |
| | * | |

Submitted: July 25, 2002
Filed: October 1, 2002

Before KRESSEL, SCHERMER, and DREHER, Bankruptcy Judges.

DREHER, Bankruptcy Judge.

This is an appeal from an order of the bankruptcy court[1] dated February 6, 2002, which held that the lien of Appellee, General Electric Capital Corporation ("GECC"), was prior to the subordinated lien of the Appellant, the Class 3 Unsecured Creditors ("Class 3"). For the reasons stated below, we affirm.

<u>FACTS and PROCEDURAL HISTORY</u>

Dial Business Forms, Inc. ("Dial") borrowed $1,197,185.60 from GECC in three separate loans between July and August 1995. To secure the notes, Dial granted GECC a security interest in certain equipment and GECC duly perfected its interest. On November 10, 1997, Dial filed a Chapter 11 bankruptcy petition and in January 1999, the Bankruptcy Court confirmed Dial's chapter 11 plan ("Plan"). The Plan granted GECC an allowed secured claim in the amount of $1,000,000.00 and further provided that GECC would retain its security interests and liens. Class 3, the class of unsecured creditors, would receive various distributions under the Plan secured by, as stated in paragraph 3.3(E) of the plan, "a subordinated interest" in all of Dial's assets plus a pledge by Charles Barnett (Dial's former owner) of all his stock in Dial. Paul D. Sinclair ("Trustee") serves as the Trustee on behalf of Class 3.

On January 13, 1999, as required by the Plan, Dial executed a promissory note in the face amount of $950,000.00, a security agreement, and UCC-1 financing statements in favor of the Trustee. On January 19, 1999, the Trustee duly perfected the security interest by filing the financing statements.

Subsequently, GECC failed to file continuation statements and its UCC-1 financing statements lapsed in July and August 2000 pursuant to Missouri Revised Statutes § 400.9-403(2). On June 1, 2001, after Dial failed to make distributions to

---

[1] The Honorable Arthur B. Federman, Chief Judge, United States Bankruptcy Court for the Western District of Missouri.

2

Class 3 as required by the Plan, the Trustee gave notice of intent to foreclose his security interest by conducting a sale of all of Dial's assets. The Trustee asserted that the lapse of GECC's financing statements elevated the Class 3 lien to first priority position on the equipment, superior to the GECC lien.

In response, GECC commenced an adversary proceeding against the Trustee seeking a declaration from the bankruptcy court that its lien was superior to the lien granted to Class 3 by the Plan. On November 9, 2001, the bankruptcy court held a pretrial conference during which the parties agreed to submit a stipulation of material facts in lieu of conducting an evidentiary hearing. The bankruptcy court issued a scheduling order requiring the parties to submit the stipulation of facts no later than November 30, 2001 and, in the event that any facts remained in dispute, the bankruptcy court scheduled the matter for trial on that date. Before the deadline, the parties filed a joint stipulation of material facts and informed the bankruptcy court that an evidentiary hearing was not needed.

On December 12, 2001, the Trustee attempted to supplement the evidentiary record by filing the affidavit of Tom Litton, chairperson of the unsecured creditors committee. The affidavit offered testimony concerning the committee's intent regarding the subordination language contained in the Plan. In January 2002, the bankruptcy court heard oral arguments from counsel and denied the admission of the Litton affidavit offered by the Trustee. Thereafter, the bankruptcy court issued an order holding that the Trustee's lien was subordinated to GECC's lien by the terms of the Plan. The Trustee appeals.

### DECISION

Confirmation of a plan "acts like a contract." *See e.g.*, United States v. Lincoln Sav. Bank (In re Commercial Millwright Serv. Corp.), 245 B.R. 603, 606 (N.D. Iowa 2000)(*quoting* First Union Commercial Corp. v. Nelson, Mullins, Riley

& Scarborough (In re Varat Enterprises, Inc.), 81 F.3d 1310, 1317(4th Cir. 1996); Consumers Realty & Dev. Co., Inc., v. Goetze (In re Consumers Realty & Dev. Co., Inc.), 238 B.R. 418, 425 (B.A.P. 8th Cir. 1999). As with any contract, if the bankruptcy court's review did not go beyond the "four corners" of an unambiguous plan, we review its interpretation of the plan *de novo*. *See* Stevenson v. Stevenson Assocs. (In re Stevenson Assocs., Inc.), 777 F.2d 415, 418 (8th Cir. 1985). *Contra* In re Weber, 25 F.3d 413, 416 (7th Cir. 1994)(holding instead that bankruptcy court's interpretation of a confirmed plan should receive deferential review). We also review *de novo* the bankruptcy court's determination that the plan was unambiguous. *See* John Morrell & Co. v. Local Union 304A , United Food & Commercial Workers, 913 F.2d 544, 550 (8th Cir. 1990); Porous Media Corp. v. Midland Brake, Inc., 220 F.3d 954, 959-60 (8th Cir. 2000). If the plan was ambiguous, the interpretation implicates questions of fact which we review for clear error. *See* Stinnett v. Colorado Interstate Gas Co., 227 F.3d 247, 254 (5th Cir. 2000); Platinum Tech., Inc. v. Federal Ins. Co., 282 F.3d 927, 930 (7th Cir. 2002). And finally, we review the bankruptcy court's exclusion of the affidavit of Litton for a clear abuse of discretion. Stephens v. Rheem Mfg. Co., 220 F.3d 882, 885 (8th Cir. 2000).

The bankruptcy court found, and GECC does not contest, that if Missouri's version of the Uniform Commercial Code ("UCC"), specifically section 400.9-403(2),[2] controls, GECC's financing statements lapsed and Class 3 would hold a lien superior to the lien of GECC. MO. ANN. STAT. § 400.9-403(2) (West 2000). As recognized by the bankruptcy court, "when the drafters of the UCC amended Article 9 in 1972, they added a sentence to section 9-403(2) that made it clear that a junior creditor who filed its financing statement before the lapse will move up in priority, even though it had actual knowledge of the prior lien." GECC v. Dial Bus.

---

[2]Missouri's old version of Article 9 applies in this case. Revised Article 9 does not apply to cases filed before its July 1, 2001 effective date. All references to Article 9 are prior to revision. *See* MO. REV. STAT. § 400.9-709(a) (West Supp. 2002).

4

Forms, Inc. (In re Dial Bus. Forms, Inc.), 273 B.R. 594, 597 (Bankr. W.D. Mo. 2002). Instead, the bankruptcy court held that the subordination language in the plan and not the lapse provision of the UCC determined the priority of the liens. *Id.* In making this determination, the bankruptcy court interpreted the plan as a contract between all the parties, including Class 3 and GECC. Moreover, it interpreted the provision that Class 3 receive a "subordinated interest in all of Dial's assets " to permanently subordinate Class 3's security interest to that of GECC. Dial Bus. Forms, 273 B.R. at 598-600.

A confirmed chapter11 plan binds the debtor and creditors, whether or not the creditors accepted the plan. 11 U.S.C. § 1141(a). Confirmation of the Plan created a new and legally binding agreement among all the parties to Dial's bankruptcy case. *See, e.g.,* Xofox Indus., Ltd., 241 B.R. 541, 543 (Bankr. E.D. Mich. 1999) ("Section 1141(a) of the Code provides that the plan becomes a legally binding agreement."); In re Ernst, 45 B.R. 700, 702 (Bankr. D. Minn. 1985) ("The plan is essentially a new and binding contract, sanctioned by the Court, between the debtor and his preconfirmation creditors.").

The Trustee argues that the use of the term "subordinated interest" in 3.3(E) was merely a meaningless statement of the obvious - a statement of the status quo not meant as a subordination agreement. He compares this case to In re Chattanooga Choo-Choo Co., 98 B.R. 792, 806 (Bankr. E.D. Tenn. 1989), where the intervening bank had a provision in its security agreement recognizing that its interest would be "subject to" a prior security agreement. The Chattanooga Choo-Choo court held that the use of the language "subject to" was merely descriptive and did not create an agreement of subordination. The case, as properly distinguished by the bankruptcy court, did not involve a confirmed chapter 11 plan and the security agreements did not contain subordination language.

As previously stated, the provisions of a plan are like those of a contract. A contract is not interpreted to render its terms meaningless. "The terms of a contract

5

are read as a whole to come to the intention of the parties." <u>Village of Cairo v. Bodine Contracting Co.</u>, 685 S.W.2d 253, 264 (Mo. Ct. App. 1985). "[E]ach term is construed to avoid an effect which renders other terms meaningless: a construction which attributes a reasonable meaning to all the provisions of the agreement is preferred to one which leaves some of them without function or sense." *Id.*

The bankruptcy court properly construed this plan to be unambiguous and to give function to the provision that Class 3 "*shall be* secured by a *subordinated interest* in all of Dial's assets." (emphasis added). *See* <u>Sonoma Mgt. Co. v. Boessen</u>, 70 S.W.3d 475, 477 (Mo. Ct. App. 2002)(noting that words should be given their natural and ordinary meaning). By its plain meaning, the subordination language contained in Paragraph 3.3(E) of the plan subordinated Class 3's lien to GECC irrespective of whether GECC's lien was properly perfected under section 400.9-403(2). Mo. Ann. Stat. § 400.9-403(2) (West 2000).

In giving paragraph 3.3(E) its proper meaning, it must be contrasted with the language in the following paragraph, 3.3(F), in which Class 3, "agree[s] to subordinate" to a limited extent to creditors providing refinancing to Dial.[3] Clearly,

---

[3] §3.3 (E) of the plan reads, in part:

> The Allowed Unsecured Claims shall be secured by a
> subordinated interest in all of Dial's assets, plus a pledge
> by Charles Barnett of all of his stock in the Debtor . . . .

§ 3.3(F) continues:

> The Class 3 Creditors agree to subordinate their security
> interest in the Debtor's equipment, but not the stock, with
> respect to the refinancing of existing secured debt, so
> long as the monthly amortization of principal and interest
> after the refinancing does not exceed that set forth in the

6

3.3(F) was an agreement to take action to subordinate as allowed by section 400.9-316. MO. ANN. STAT. § 400.9-316 (West 2000).[4] The Agreement to subordinate to subsequent refinancing lenders by Class 3 was necessary to make refinancing possible. Otherwise, Class 3 was entitled under the UCC to a priority lien since post-confirmation creditors were not otherwise entitled to any protections under the Plan.

At the time of confirmation of the plan, Class 3 was not entitled to priority over GECC and an agreement to subordinate was unnecessary. Paragraph 3.3(E), unlike 3.3(F), did not constitute an express agreement by Class 3 to subordinate. Section 400.9-316 contemplates an agreement by a person "entitled to priority." MO. ANN. STAT. § 400.9-316 (West 2002). The Trustee is not a person entitled to priority over GECC and Class 3, by acceptance of the plan, did not agree to subordinate its interests to GECC. It was already subordinate. MO. ANN. STAT. § 400.9-316 (West 2000). Our interpretation of paragraphs 3.3(E) and (F) gives both paragraphs a function.

The bankruptcy court relied upon General Electric Credit Corp. v. Nardulli & Sons, Inc., 836 F.2d 184 (3rd. Cir. 1988), for the proposition that as participants in the plan process, Class 3 was aware of the security interest of GECC, agreed to subordinate that interest and that no further perfection was necessary. Dial Bus. Forms, 273 B.R. at 599. We do not find the rationale of Nardulli persuasive, but we do agree with the bankruptcy court's ultimate conclusion. When confirmed,

---

> Plan in favor of GECC, NationsCredit, and Mercantile,
> in the aggregate amount of $40,435.55 per month. Once
> any part of the debt is refinanced, the agreement to
> subordinate is only effective with respect to the reduced
> amount.

[4]"Nothing in this article prevents subordination by agreement by any person entitled to priority." MO. ANN. STAT. § 400.9-316 (West 1994).

regardless of Class 3's acceptance or rejection of the plan, the plan bound Class 3 to its terms and the agreement of Class 3 was unnecessary for the plan to subordinate Class 3's interest. *See* 11 U.S.C. § 1141(a).

The bankruptcy court more appropriately relied upon Commercial Millwright. That case holds that a confirmed plan controls, even if a different result would occur under state law. Commercial Millwright, 245 B.R. at 605. *See also* In re Wrenn Ins. Agency of Mo., Inc., 178 B.R. 792, 796 (Bankr. W.D. Mo. 1995); United States v. Standard State Bank, 91 B.R. 874 (W.D. Mo. 1988). As a result, "[o]nce a plan is confirmed, neither a debtor nor a creditor may assert rights that are inconsistent with its provisions." Wrenn Ins. Agency, 178 B.R. at 796 (internal citations omitted).

The unambiguous language in the Plan expressly provides that the Trustee's lien against the assets shall be subordinated to the liens of secured creditors, including GECC. Class 3 knew of GECC's status as a secured creditor, did not object to receiving a subordinated interest, and was bound by the terms of the Dial's confirmed Plan. The application of Article 9 was preempted by the specific priority provisions of the Dial's confirmed Plan. *See* Consumers Realty, 238 B.R. at 426. In Consumers Realty, the court held that:

> Because the bankruptcy code explicitly provides that "the provisions of a confirmed plan bind the debtor . . . and any creditor . . . ," 11 U.S.C. § 1141(a), the terms of the Plan govern . . . . Furthermore, it is well settled that the Supremacy Clause dictates that when state law is contrary to federal bankruptcy law, the bankruptcy provisions prevail. . . . "If a provision of the Plan, a creature of federal law, conflicts with the law of a state and the state law 'frustrates the full effectiveness of federal law [the state law] is rendered invalid by the Supremacy Clause.'"

Id. at 426 (internal citations omitted).

As a result, the subordination language contained in paragraph 3.3(E) of the Debtor's confirmed Plan controls over any Missouri state law that provides to the contrary. Accordingly, to the extent the GECC may have lost its position as a senior lienholder due to the lapse of its UCC-1 financing statements under Missouri Revised Statutes § 400.9-403(2), section 1141 of the Bankruptcy Code provides that the subordination language of the Plan "trumps" conflicting state law and GECC maintains its priority position over the Trustee and Class 3. MO. ANN. STAT. § 400.9-403(2) (West 2000). Having reviewed the plan *de novo,* we find the plan unambiguous and properly interpreted by the bankruptcy court.

The Trustee also appealed the bankruptcy court's decision not to admit the Litton affidavit. The Trustee argues that under Federal Rule of Civil Procedure 43(e), made applicable to this case by Federal Rule of Bankruptcy Rule 9017, the bankruptcy court may hear motions based upon affidavits and the Trustee anticipated the court would accept the affidavit. Although the Trustee mentioned to the bankruptcy court at the preliminary hearing that he would offer an affidavit, nothing in the record suggests the court agreed to consider the matter based on affidavits or to the admission of the Litton affidavit. The parties agreed to a stipulation of facts. The court established a trial date to hear any evidence not stipulated. The Trustee did not obtain a stipulation as to the admission of the affidavit and did not to present the testimony of Ron Litton at a trial.[5] Both options were available to the Trustee. His failure to exercise those options was neither the fault of the court or a misrepresentation by GECC. After November 30, 2001, the evidentiary record was closed and the court did not abuse its discretion in refusing to admit the affidavit at the time set for oral argument.

Accordingly, we affirm the decision of the bankruptcy court.

---

[5]In addition, since the affidavit would be considered as part of the trial record under Fed. R. Civ. P. 43(a), applicable to this proceeding by Fed. R. Bankr. P. 9017, the rules of evidence applied and the affidavit was hearsay and not admissible. *See* FED. R. EVID. 801 & 802.

9

SCHERMER, Bankruptcy Judge, Dissenting.

I respectfully disagree with the majority's conclusion that the lien of GECC remained senior to the lien of the Class 3 creditors after GECC's UCC-1 financing statement lapsed. Pursuant to Section 9-403(2) of the Uniform Commercial Code, when a financing statement lapses, the security interest becomes unperfected and such interest is deemed to have been unperfected as against a person who became a lien creditor before the lapse. Mo. Rev. Stat. § 400.9-403. In this instance, GECC's financing statements lapsed and is therefore deemed to have been unperfected as against the Class 3 creditors' perfected lien. As a result, the Class 3 creditors' lien moved to a senior position when the GECC lien lapsed.

I agree with the majority that the debtor and creditors, including GECC and the Class 3 creditors, are bound by the confirmed plan which became a binding contract between the parties as of the date of confirmation. 11 U.S.C. § 1141(a). I disagree with the majority's conclusion that Section 1141(a) of the Bankruptcy Code "trumps" state law thereafter. To the contrary, state law controls the parties' relationship post-confirmation.

Property interests are created and defined by state law. *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1978). Uniform treatment of property interests within a state serves to reduce uncertainty, to discourage forum shopping, and to "prevent a party from receiving 'a windfall merely by reason of the happenstance of bankruptcy.'" *Id.* (quoting *Lewis v. Mfr. Nat'l Bank*, 364 U.S. 603, 609, 81 S.Ct. 347, 350, 5 L.Ed.2d 323). The justifications for application of state law are not limited to ownership interests and "apply with equal force to security interests." *Butner*, 440 U.S. at 55, 99 S.Ct. at 918. These principles apply before, during, and after a bankruptcy proceeding; nothing in 11 U.S.C. § 1141 changes this result. I must disagree with the majority's reasoning which results in GECC gaining a "windfall merely by reason of the happenstance of bankruptcy." Rather, Missouri's

version of the UCC controls the perfection and priority of the liens of GECC and the Class 3 creditors after confirmation.

The error of the majority's position is demonstrated in the following example. Assume that as of the confirmation date, GECC has a senior lien and the Class 3 creditors have a subordinated lien. One year after confirmation GECC's financing statement lapses. Two years after confirmation New Bank makes a new secured loan to the debtor. According to the majority's reasoning, the lien of the Class 3 creditors would be subordinated to the lien of GECC, but the GECC lien would be subordinated to the lien of New Bank (who was not a party to the plan and could not be bound by it), creating an irreconcilable conflict. The majority's reasoning encourages secret liens[6] and may lead to absurd results as set forth in the above example.

For the reasons set forth above, I respectfully dissent and would conclude that the lien of the Class 3 creditors has priority over GECC's lien as a result of the application of state law.

A true copy.

Attest:

CLERK, U.S. BANKRUPTCY APPELLATE PANEL
FOR THE EIGHTH CIRCUIT

---

[6]One of the principle purposes of the Bankruptcy Reform Act was to strike down secret liens. *See*, *e.g.*, *Clark v. Valley Fed. Sav. & Loan Ass'n (In re Reliance Equities, Inc.)*, 966 F.2d 1338, 1343 (10th Cir. 1992).

11