141 F.3d 420
 39 Collier Bankr.Cas.2d 1275, 32 Bankr.Ct.Dec. 581,
Bankr. L. Rep. P 77,677
 In re Ronald P. MILHAM and Benedetta Milham, Debtors.
KEY BANK NATIONAL ASSOCIATION f/k/a Key Bank of New York,
Creditor-Appellant,
v.
Ronald P. MILHAM and Benedetta Milham, Debtors-Appellees,
Andrea E. Celli, Trustee-Appellee.
 No. 1336, Docket 97-5056.
 United States Court of Appeals,
Second Circuit.
 Argued March 20, 1998.
Decided April 10, 1998.
 
 Richard L. Weisz, Albany, NY (Hodgson, Russ, Andrews, Woods & Goodyear, LLP, of counsel), for Creditor-Appellant.
 Martin J. Goodman, Albany, NY, for Debtors-Appellees.
 Andrea E. Celli, Albany, NY, for Trustee-Appellee.
 (Richard J. Miller & Associates, P.C., Rudolph J. Meola, on the brief, Albany, NY), for Amicus Curiae New York State Credit Union League, Inc.
 Before: JACOBS, LEVAL, and GIBSON,* Circuit Judges.
 PER CURIAM:
 
 
 1
 The question presented on this appeal, which is one of first impression in this Circuit, is whether an oversecured creditor is entitled to be paid its contract rate of interest post-confirmation even if the payment of that rate of interest will enable the creditor to receive more than the present value of its claim as of the effective date of the plan. For the reasons that follow, we answer this question in the negative.
 
 BACKGROUND
 
 2
 Ronald and Benedetta Milham filed a petition under Chapter 13 of the Bankruptcy Code on April 24, 1996. They were indebted to Key Bank under a retail installment contract secured by a 1991 Lincoln Town Car. The Milhams owed $3,163.07 on the contract, which has an interest rate of 9.5%. The collateral has a National Automobile Dealers Association value of $11,962.50.[1] Key Bank is therefore an oversecured creditor: the value of the asset securing its payment exceeds the amount of the debt owed to it.
 
 
 3
 The plan proposed by the Milhams contemplated payment of $3,000 plus 8.5% interest per annum on the Key Bank loan. Key Bank objected, arguing that as an oversecured creditor it is entitled to the entire amount owed plus the 9.5% per annum contract rate of interest. The Bankruptcy Court confirmed the plan at the 8.5% rate, and Key Bank appealed to the Second Circuit Bankruptcy Appellate Panel on the limited question of the applicable rate of interest post-confirmation. The panel affirmed the confirmation in an opinion by Judge Lifland, with a partial dissent by Judge Kaplan. This appeal followed.
 
 DISCUSSION
 
 4
 "In a bankruptcy case, interest is the tail of the dog, but it is a long tail and it wags a lot." Dean Pawlowic, Entitlement to Interest Under the Bankruptcy Code, 12 Bankr.Dev. J. 149, 150 (1995). Directly or by implication, the Bankruptcy Code provides for three categories of interest: (1) interest accrued prior to the filing of the bankruptcy petition (prepetition interest); (2) interest accrued after the filing of a petition but prior to the effective date of a reorganization plan (pendency interest); and (3) interest to accrue under the terms of a reorganization plan (plan interest). Id. at 151. Prepetition interest is generally allowable to the extent and at the rate permitted under the applicable nonbankruptcy law, including the law of contracts. Id. Thus, for amounts accrued prior to the Milhams' filing, it is undisputed that Key Bank is entitled to interest at the contract rate.
 
 
 5
 Pendency interest presents a trickier question. In general, the Bankruptcy Code does not provide for pendency interest, because the filing of a bankruptcy petition usually stops interest costs from running. Section 506(b), however, provides an exception for oversecured creditors:
 
 
 6
 To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs or charges provided for under the agreement under which such claim arose.
 
 
 7
 11 U.S.C. § 506(b) (1993). In this passage, Key Bank places heavy weight on the phrase "to the extent"; essentially, Key Bank argues that this provision guarantees it interest at the contract rate, even after confirmation, until the equity cushion is exhausted (that is, until the value of the collateral no longer exceeds the creditor's claim). Key Bank's position is problematic, for several reasons.
 
 
 8
 First, as the panel in the present case correctly noted, section 506(b) does not say that the oversecured creditor collects pendency interest at the contractual rate. In United States v. Ron Pair Enters., Inc., 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989), the Supreme Court held that the phrase "provided for under the agreement under which such claims arose" does not modify the phrase "interest on such claim." Unlike prepetition interest, pendency interest is not based upon contract. See Rake v. Wade, 508 U.S. 464, 468, 113 S.Ct. 2187, 2190, 124 L.Ed.2d 424 (1993) ("[T]he right to postpetition interest under § 506(b) is unqualified and exists regardless of whether the agreement giving rise to the claim provides for interest.") (internal quotation marks omitted). The appropriate rate of pendency interest is therefore within the limited discretion of the court. See In re DeMaggio, 175 B.R. 144, 148 (Bankr.D.N.H.1994). Most courts have awarded pendency interest at the contractual rate; but nevertheless, however widespread this practice may be, it does not reflect an entitlement to interest at the contractual rate.
 
 
 9
 Even if Key Bank were entitled to pendency interest at 9.5%, that rate would apply only to the period bounded by the petition on one side and on the other by confirmation of the plan, because pendency interest does not continue to run post-confirmation. "It is generally recognized that the interest allowed by § 506(b) will accrue until payment of the secured claim or until the effective date of the plan." Rake, 508 U.S. at 468, 113 S.Ct. at 2190 (citing 3 Collier on Bankruptcy p 506.05, pp. 506-43 and n. 5c (15th ed.1993)).
 
 
 10
 On the date of confirmation, the allowed claim of an oversecured creditor is augmented by the inclusion of section 506(b) pendency interest. See, e.g., Orix Credit Alliance, Inc. v. Delta Resources, Inc. (In re Delta Resources, Inc.), 54 F.3d 722, 729 (11th Cir.) ("[A]n oversecured creditor ... is entitled to receive postpetition interest as part of its claim at the time of confirmation of a plan or reorganization ...."), cert. denied, 516 U.S. 980, 116 S.Ct. 488, 133 L.Ed.2d 415 (1995); In re DeMaggio, 175 B.R. at 150 ("[Section] 506(b) determines the exact amount of the claim...."); In re Foertsch, 167 B.R. 555, 560 (Bankr.D.N.D.1994) ("[Section] 506(b) allows an oversecured creditor to enhance its claim by adding to it postpetition interest....").
 
 
 11
 Section 506(b) thus defines the allowed claim of an oversecured creditor; treatment of that claim after confirmation is governed by Section 1325, which establishes the circumstances under which the court may confirm a Chapter 13 debtor's reorganization plan:
 
 
 12
 (a) ... the court shall confirm a plan if--
 
 
 13
 (5) with respect to each allowed secured claim provided for by the plan--
 
 
 14
 (A) the holder of such claim has accepted the plan;
 
 
 15
 (B) (i) the plan provides that the holder of such claim retain the lien securing such claim; and
 
 
 16
 (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or
 
 
 17
 (C) the debtor surrenders the property securing such claim to such holder; ...
 
 
 18
 11 U.S.C. § 1325(a) (1993). Under this provision, the court can confirm a plan if one of three conditions is satisfied with respect to secured creditors (a category which, of course, includes oversecured creditors): the secured creditor accepts the plan; the debtor surrenders the property securing the claim to the creditor; or the debtor invokes the so-called "cram-down" power of section 1325(a)(5)(B). The present case concerns the cram-down option, pursuant to which the debtor can keep the property over the objection of the creditor. The creditor then retains a lien securing the claim and the debtor must pay the creditor over the life of the plan (which under Chapter 13 is not to exceed five years) amounts totalling the present value of the allowed secured claim as of the effective date of the plan. See Associates Commercial Corp. v. Rash, --- U.S. ----, ---- - ----, 117 S.Ct. 1879, 1882-83, 138 L.Ed.2d 148 (1997).
 
 
 19
 Postconfirmation interest, or plan interest, is a function of the present value requirement of the cram-down provision. The Code does not define the term "present value" but legislative history describes the mechanical process of determining present value in a manner consistent with the use of the term by the economic and financial community. See In re Snider Farms, Inc., 83 B.R. 977, 988-89 (Bankr.N.D.Ind.1988) (noting that "present value" is a financial term and recounting legislative history of a related provision). Thus, a bankruptcy court confirming a Chapter 13 plan that invokes the cram-down option would undertake the following calculation: first, the court would determine the sum of the principal amount (including section 506(b) interest) that would be due if it were to be paid in total on the date of confirmation; next, the court would determine the schedule of installment payments to be made pursuant to the plan; finally, the court would impose interest at a rate equal to that necessary to recoup the value of the secured claim determined in the first step.
 
 
 20
 We have previously determined that interest under § 1325(a)(5)(B)(ii) "should be fixed at the rate on a United States Treasury instrument with a maturity equivalent to the repayment schedule under the debtor's reorganization plan." In re Valenti, 105 F.3d 55, 64 (2d Cir.1997). However, "[b]ecause the rate on a treasury bond is virtually risk-free, the § 1325(a)(5)(B)(ii) interest rate should also include a premium to reflect the risk to the creditor in receiving deferred payments under the reorganization plan." Id. The court below determined that in the Milhams' case, this equation resulted in an 8.5% postconfirmation interest rate.
 
 
 21
 Key Bank argues that it should receive a higher rate of interest post-confirmation than one that would assure it the present value of its claim as of the confirmation date for two reasons: (1) it is entitled to its contract rate of interest; and (2) the words "to the extent" in section 506(b) mean that it continues to receive contract interest even after confirmation up until the point at which the equity cushion in the Lincoln Town Car is exhausted.
 
 
 22
 As to the first point, Key Bank's repeated theme is that it should not be required to accept less than contract interest in the post-confirmation period because that is no more than its well-secured contract right. But Key Bank's allowed claim under section 506(b) includes both principal and interest. By seeking to apply the contract rate to both components, Key Bank in essence seeks to compound its interest. Were we to adopt its interpretation, Key Bank would receive substantially more than a stream of payments equal to the "present value" of its claim under section 1325; it would receive compound interest for which its contract does not provide. Moreover, section 1322(b)(2) of the Code expressly authorizes debtors to modify the rights of secured claim holders (other than holders of claims secured only by the debtor's principal residence). 11 U.S.C. § 1322(b)(2) (1993). As the Ninth Circuit has noted, "[t]he cramdown route necessarily involves a modification of the creditor's rights with regard to such factors as number of payments and the rate of interest." Shearson Lehman Mortgage Corp. v. Laguna (In re Laguna), 944 F.2d 542, 544-45 (9th Cir.1991) (emphasis added) (citation omitted), cert. denied, 503 U.S. 966, 112 S.Ct. 1577, 118 L.Ed.2d 219 (1992).
 
 
 23
 As to the second point, we prefer an interpretation of section 506(b) that accommodates section 1325, and we believe one is readily available. "To the extent" means that pendency interest runs (often, although not necessarily, at the contract rate) until the time of confirmation unless the equity cushion is exhausted before that; this makes perfect sense because at the point preconfirmation that the equity cushion is exhausted, the creditor ceases to be over secured.
 
 
 24
 Accordingly, we hold that an oversecured creditor such as Key Bank is entitled to receive § 506(b) interest only until the confirmation date of the Chapter 13 reorganization plan. At that time, the accumulated pendency interest becomes a part of the allowed secured claim, and the plan must provide for payment of the present value of such allowed claim as of the effective date of the plan. Present value is achieved by the payment of interest at a rate calculated in accordance with our holding in In re Valenti. Because the postconfirmation rate in the confirmed plan at issue was so calculated, the bankruptcy court decision confirming the plan, and the decision of the Bankruptcy Appellate Panel affirming the confirmation, are affirmed.
 
 CONCLUSION
 
 25
 The decision of the Bankruptcy Appellate Panel is affirmed.
 
 
 
 *
 Hon. John R. Gibson, of the United States Court of Appeals for the Eighth Circuit, sitting by designation
 
 
 [1]
 According to the Milhams, the car has a value of $8,713.00. In any event, the Milhams do not dispute that the value of the collateral substantially exceeds the balance due to the creditor